UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------X

GARY LABARBERA and FRANK FINKEL, as Trustees
of Local 282 International Brotherhood of Teamsters Welfare,
Pension, Annuity, Job Training and Vacation Sick Leave
Funds,

        Plaintiffs,                                     **<u>REPORT AND</u>**
                                                        **<u>RECOMMENDATION</u>**
    -against-                                    06-CV-6642 (FB) (JMA)

TORRETTA TRUCKING INC. and
GIUSEPPE SCALICI,

        Defendants.

----------------------------------------------------------------------------X

A P P E A R A N C E S:

Avram H. Schreiber, Esq.
40 Exchange Place, Suite 1300
New York, New York 10005
*Attorney for Plaintiffs*

**AZRACK**, **United States Magistrate Judge:**

      By order dated February 23, 2007, the above-captioned action was referred to me by the Honorable Frederic Block for a report and recommendation on the relief to be afforded Gary LaBarbera and Frank Finkel, as Trustees of Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Funds ("the plaintiffs" or "the Funds") on their default judgment against defendants Torretta Trucking Inc. ("Torretta") and Giuseppe Scalici ("Scalici").

      For reasons more fully set forth below, I respectfully recommend that a judgment of $7,025.93 be entered against Defendant Torretta, and that a judgment of $1,876.66 be entered

1

against Defendant Scalici. This amount reflects unpaid interest and liquidated damages stemming from delinquent contributions to the Funds for amounts due in August 2006; unpaid contributions, interest, and liquidated damages stemming from unmade payments during September 2006; administrative fees for returned checks; and attorney's fees and costs reasonably related to collecting those amounts. I respectfully recommend that the Court deny plaintiffs' claims for damages that stem from the period June 2005 through February 2006, and from an audit covering the period of July 2004 to August 2005, because plaintiffs did not assert those claims in the complaint. Furthermore, I respectfully recommend that the plaintiffs' request for a permanent injunction be denied.

## I. BACKGROUND

This action is brought pursuant to §§ 502 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132 and 1145 ("ERISA"), and § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 ("Taft-Hartley Act"). Plaintiffs allege that defendants violated ERISA and the Taft-Hartley Act by failing to make requisite benefit contributions to the Funds. The Funds are jointly administered, multi-employer benefit trusts within the meaning of ERISA. (Dkt. No. 1: Compl. ¶ 2.) Plaintiffs are the trustees and fiduciaries of these Funds. (Id. ¶ 3.) The Funds provide fringe benefits to employees performing services within the trade and geographical jurisdiction of Local 282 of the International Brotherhood of Teamsters (the "Union"). (Id. ¶ 4.)

Defendant Torretta is a corporation that maintains its principal place of business in Staten Island, New York. (Id. ¶ 6.) Defendant Scalici, defendant Torretta's corporate president, maintains a business office in Staten Island. (Id. ¶ 7.) On July 12, 2004, Defendant Torretta signed the New York City Heavy Construction & Excavating Contract 2002-2006 ("the Contract") with the Union.

(Dkt. No. 12: Aff. in Supp. of Plaintiffs' Claim for Damages ("Damages Affirmation"), Ex. C.) The Contract, which was in force through June 30, 2006, obligated Torretta to make contribution payments to the Funds. (Id.) The Contract required an employer who did not post a surety bond to pay all benefits on a weekly basis. (Id.) Defendant Torretta did not post a surety bond, and was thus obligated to pay benefits weekly. (Id.) The Contract was later incorporated by reference into a 2006-2009 Metropolitan Truckers Association ("MTA") Memorandum of Agreement ("MTA Agreement") signed by the MTA and the Union on July 14, 2006 and in force through the period relevant to this suit. (Id., Ex. A.) As a member of the MTA, defendant Torretta is bound to the MTA Agreement. (Id., Ex. B.)

On December 8, 2006, the Funds filed a complaint alleging that a number of contribution checks written to the Funds by defendant Torretta, and signed by defendant Scalici in his personal capacity, were returned for insufficient funds. (See Compl. ¶ 28-31 and Ex. A.) The returned contribution checks for payments accruing during August 2006 were later replaced. (Damages Affirmation ¶ 22.) The checks for payments accruing during September 2006, however, were never replaced. (Id. ¶ 23.) All of the returned checks resulted in delinquency charges, administrative fees, and liquidated damages under the terms of the MTA Agreement. (Id., Ex. D.) Plaintiffs demanded a judgment for the unpaid contributions, interest on the unpaid and late contributions, liquidated damages, attorneys' fees and costs, and a permanent injunction. (See Compl.)

In light of defendant's failure to appear in or otherwise defend this action, plaintiffs moved for default judgment on January 19, 2007. (Dkt. No. 5: Mot. for Default J.) On January 29, 2007, the Clerk of Court noted the default pursuant to Fed. R. Civ. P. 55(a). (Dkt. No. 7: Clerk's Entry of Default.) Pursuant to Fed. R. Civ. P. 55(b)(2), Judge Block granted judgment by default to plaintiffs on February 27, 2007, and referred the matter to me for a report and recommendation

concerning the relief requested. (Dkt. No. 9: Memorandum & Order.)

Plaintiffs' complaint asserted damages in the amount of $4,286.62. (See generally Compl.) According to plaintiffs, these damages consisted of unmade payments and delinquency charges which defendants owed to the plaintiffs due to the return of defendants' contribution checks covering periods in August 2006 and September 2006. (Id.) Plaintiffs later filed a Statement for Judgment Against Torretta Trucking Inc. ("Torretta Statement") and a Statement for Judgment Against Giuseppe Scalici ("Scalici Statement") on January 19, 2007. (See Dkt. No. 5: Mot. for Default J.) These documents added court costs and interest on unpaid contributions to arrive at total damages of $4,732.22 against each defendant. (Id.)

After Judge Block issued his February 23, 2007 Memorandum and Order granting plaintiffs' motion for entry of a default judgment, plaintiffs filed the Damages Affirmation, dated May 30, 2007. In the Damages Affirmation, plaintiffs claimed entitlement to $88,226.86 for unpaid principal, interest, liquidated damages, administrative fees, auditors' fees, and attorney's fees and costs. (Damages Affirmation ¶ 13.) Plaintiffs arrived at this significant increase (almost 20 times more than the amounts previously asserted) by claiming, for the first time, that the defendants failed to make, or were late in making, various specified payments between June 2005 and February 2006, (see id. ¶ 12), and by including discrepant amounts listed in an audit report dated January 4, 2007 (id., Ex. I). Plaintiffs also sought the costs of the audit, which covered the period July 2004 to August 2005. (Id.)

## II. DISCUSSION

**A.     Liability**

Defendant's default amounts to an admission of liability and all of the well-pleaded allegations in plaintiffs' complaint pertaining to liability are deemed true. See Credit Lyonnais Sec.,

4

Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The allegations in plaintiffs' complaint establish the elements of liability required to state a claim under § 1145 of ERISA. Section 1145 states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Plaintiffs allege that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the Funds, and that defendant failed to make such contributions. (Compl. ¶¶ 8-10.)

**B.      Damages**

**1.      Damages Available Under ERISA**

ERISA allows plan fiduciaries to bring civil actions to enforce the provisions of the CBA and obtain equitable relief. 29 U.S.C. § 1132(a)(3)(B)(ii); see also 29 U.S.C. § 1132(d)(1). Section 1145 makes clear that a plan member's contractual duty to make contributions to multiple employer plans is a statutory requirement, and violations of § 1145 are enforceable through civil actions brought under § 1132(g). New York State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc., 382 F.3d 272, 278 (2d Cir. 2004).

Since plaintiffs have established liability under § 1145, they are entitled to an award of: (1) the amount of unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorneys' fees and costs; and (5) such other legal and equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2).

**2.     Amounts Stemming from the Period of June 2005 to February 2006 and the Audit Report Dated January 4, 2007**

As discussed above, plaintiffs' Damages Affirmation seeks a significant increase in damages over that demanded in the complaint. This increase consists of two main categories: liquidated damages and interest for late contributions between June 2005 and February 2006, for a total of $17,862.33 (see Damages Aff. ¶¶ 15-21); and amounts listed in the audit report of January 4, 2007, comprised of discrepancies in payments during the period of July 12, 2004 to August 31, 2005, interest and liquidated damages on those discrepant amounts, and audit costs, for a total of $62,031.93 (id. ¶ 24). Thus, the Damages Affirmation demands $79,894.26 that cannot be calculated from the causes alleged in the complaint.

Relief in a default judgment "shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed. R. Civ. P. 54(c). This principle is grounded in basic concepts of notice and fairness. A defendant must be able to look to the complaint to decide, on the basis of the relief requested therein, whether or not to mount a defense. See, e.g., Appleton Elec. Co. v. Graves Truck Line, Inc., 635 F.2d 603, 610-11 (7th Cir. 1980) (holding that a default judgment did not violate Fed. R. Civ. P. 54(c) where the complaint and proposed default order were "definite enough to allow [defendant] to calculate its maximum liability.")

Here, plaintiffs demand a nearly twenty-fold increase in damages over the amounts noticed in the complaint and Motion for Default Judgment. Granting these damages would defeat the purpose of Fed. R. Civ. P. 54(c). I therefore respectfully recommend that plaintiffs be denied recovery for damages from the periods of June 2005 to February 2006 (when numerous payments were allegedly delinquent) and July 2004 to August 2005 (the period covered by the audit), as well as the costs of the audit and attorney's fees related to researching these allegations.

**3.     Calculation of Damages**

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Credit Lyonnais, 183 F.3d at 155; Au Bon Pain Corp., 653 F.2d at 65. Rather, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). In conducting such an inquiry, Fed. R. Civ. P. 55(b)(2) provides: if "it is necessary to take an account or determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper . . . ." The Second Circuit has held that "it [is] not necessary for the [court] to hold a hearing, as long as it ensured that there was a basis for the damages specified . . . ." Transatlantic Marine, 109 F.3d at 111 (quoting Fustok v. ContiCommodity Serv. Inc., 873 F.2d 38, 40 (2d Cir. 1989)). Here, plaintiffs have filed detailed affirmations and exhibits pertaining to the damages incurred and I consider these to be sufficient evidence to form the basis for an award of damages.

**a.     Unpaid Contributions**

Defendant Torretta, by its default, has admitted that it never replaced returned checks for principal contributions it was required to make in September 2006. (See Compl. ¶ 14, Damages Aff. ¶¶ 22-23.) Plaintiffs seek damages in the amount of $1,098.71 for this unpaid principal. (Damages Aff. ¶ 23.) Specifically, plaintiffs have provided copies of contribution checks which were returned due to insufficient funds. (See Compl., Ex. A and Damages Aff., Ex. H.) The returned checks for payments due in September 2006 are as follows: check 3593, for $358.00, made out to "Local 282-Welfare Fund"; check 3594, for $280.00, made out to "Local 282-Pension Fund"; check 3595, for $336.71, made out to "Local 282-Annuity Fund"; check 3596, for $4.00, made out to "Local 282-Job

7

Training Fund"; and check 3597, for $120.00, made out to "Local 282-Vac/Sick Fund." (Id.) Defendant Scalici, by his default, admits that he signed each of these checks in his personal capacity. (Compl. ¶¶ 29-30.)

After carefully reviewing plaintiffs' calculations, I respectfully recommend granting plaintiffs damages against both Defendant Torretta and Defendant Scalici for unpaid principal in the amount requested, $1,098.71.

**b.      Interest on the Unpaid Contributions**

In their application, plaintiffs seek an award of interest for August 2006 payments which were delinquent between the due date, September 10, 2006, and October 2, 2006, the date on which payment was made. (Damages Aff. ¶ 22.) Plaintiffs further seek an award of interest for September 2006 payments, which became delinquent on October 10, 2006 and remain unpaid. (Id. ¶ 23.)

Under 29 U.S.C. § 1132(g)(2), plaintiffs are entitled to an award of interest. ERISA provides that the "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under § 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Pursuant to the terms of the MTA Agreement, which incorporates by reference the Restated Agreement and Declaration of Trust ("the Declaration", see Damages Aff., Ex. D), as amended on October 29, 2003 (see Damages Aff., Ex. F), the applicable interest rate is 18 percent per annum. Having reviewed plaintiffs' detailed calculations and supporting documentation, I respectfully recommend that plaintiffs be awarded interest of $205.92 against Defendant Torretta. This amount is comprised of $8.15 in interest for the 22 days that the August 2006 payments were late, and $197.77 in interest for the September 2006 payments since October 10, 2007 (when payment became due).

Since Defendant Scalici is liable to plaintiffs in his personal capacity under N.Y. U.C.C. § 3-403 (Consol. 2007) for the returned contribution checks, he is also liable for interest on that amount under New York law. Section 3-122(4) of N.Y. U.C.C. (Consol. 2007) indicates that "interest runs at the rate provided by law for a judgment"; that rate is set at 9 percent per annum by N.Y. C.P.L.R. § 5004 (Consol. 2007). Therefore, I respectfully recommend that plaintiffs be awarded interest of $102.95 against Defendant Scalici on the returned checks. This amount is comprised of $4.07 for the late August 2006 payments, and $98.88 for the still-outstanding September 2006 payments.

c.  **Liquidated Damages**

Section 1132(g)(2)(C) provides that, in addition to the unpaid contribution amount and the interest due, plaintiffs will be awarded "an amount equal to the greater of (i) interest paid on the unpaid contributions or (ii) liquidated damages provided for under the plan so long as it does not exceed twenty percent of the unpaid contributions." 29 U.S.C. § 1132(g)(2)(c). The terms of the Declaration entitle plaintiffs to 20 percent of the unpaid principal. (Damages Aff., Ex. D.) Having reviewed plaintiffs' detailed calculations and supporting documentation, I respectfully recommend that plaintiffs be awarded $367.88 in liquidated damages against Defendant Torretta. This amount includes $148.14 in liquidated damages for August 2006 payments that were made late, and $219.74 in liquidated for September 2006 payments that still have not been made.

d.  **Administrative Charges for Returned Checks**

As of March 1, 2006, an administrative fee of $75.00 was imposed by amendment to the Declaration for each contribution check returned to plaintiffs for insufficient funds. (Id., Ex. G.) Nine checks to plaintiffs from Defendant Torretta, signed by Defendant Scalici in his personal

capacity, were returned by plaintiffs' bank for insufficient funds. (Compl. ¶¶ 29-30 and Ex. A.) By their default, defendants are deemed to have admitted responsibility for these charges. Accordingly, I respectfully recommend that plaintiff be awarded damages of $675.00 against Defendant Torretta and $675.00 against Defendant Scalici.

**e.     Attorneys' Fees and Costs**

In conjunction with an award for unpaid contributions, ERISA mandates an award for reasonable attorneys' fees and costs. See 29 U.S.C. § 1132(g)(2)(D).

*i.     Fees*

"The determination of a reasonable fee award under [§] 1132(g)(2)(D) of ERISA lies within the sound discretion of the [] judge." Bricklayers Ins. and Welfare Fund v. Rocky's Const., No. 06 CV 1156, 2007 WL 951859, *2 (E.D.N.Y. March 27, 2007) (citing Meehan v. Gristede's Supermarkets, Inc., No. 95 CV 2104, 1997 WL 1097751, at *5 (E.D.N.Y. Sept. 25, 1997) (internal quotations and citations omitted); Cruz v. Local Union No. 3 of Int'l Bd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994)). A party seeking such an award must support its application by submitting contemporaneous time records that detail "for each attorney, the date, hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

The Second Circuit has adopted the lodestar approach to calculating attorneys' fees. See Bourgal v. Lakewood Haulage Inc., 827 F. Supp. 126, 129 (E.D.N.Y. 1993) (citing Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989)). In computing these fees, a court multiplies the number of hours reasonably worked by what it deems a reasonable hourly rate. Bourgal, 827 F. Supp. at 129. Such awards are to be calculated in accordance with "the prevailing market rates in the relevant community." Chambless, 885 F.2d at 1058 (quoting Blum

10

v. Stenson, 465 U.S. 886, 895 (1984)). Thus, "[a court] must ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Chambless, 885 F.2d at 1058-59 (quoting Blum, 465 U.S. at 896 n. 11).

Here, plaintiffs' counsel's affirmation indicates that three attorneys and one paralegal performed services in connection with this matter. (Damages Aff. ¶ 25 and Ex. J.) Their rates are as follows: Avram H. Schreiber, a partner, charging $275.00 per hour; Christina Cruz and Woomee Lee, associates, charging $200.00 per hour; and a paralegal, charging $70.00 per hour. (Id.) These rates are reasonable and appropriate. See, e.g., La Barbera v. D&R Materials, Inc., No. 06 CV 2100, 2007 WL 1041666, at *4 (E.D.N.Y. Apr. 3, 2007) (finding rate of $340.00 per hour reasonable in default ERISA case); King v. STL Consulting, LLC., No. 05 CV 2719, 2006 WL 3335115, at *7-8 (E.D.N.Y. Oct. 3, 2006) (awarding fees for Mr. Schreiber's time in a default ERISA case at the rate of $275.00 per hour); LaBarbera v. J.E.T. Res., Inc., 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (awarding fees at the rate of $250 per hour for work done on a straightforward ERISA action); but see La Barbera v. Golden Vale Const. Group, No. 06 CV 813, 2007 WL 2071565, at *5 (E.D.N.Y. July 17, ,2007) (reducing rate of associate work to $140.00 per hour).

Plaintiffs request attorneys' fees of $5,499.11 for 36.66 hours of work (Damages Aff., Ex. J.) Counsel's work on this case included drafting and editing the complaint, preparing affidavits of service, drafting correspondence, and preparing the default judgment submissions. (Id.) Some of this work stemmed from counsel's efforts to include in the Damages Affidavit certain amounts owed which had not been included in the original complaint, as discussed above. I have carefully reviewed the itemized list of fees incurred by counsel, and I find that the requested fees should be reduced by $1,377.00. I recommend this reduction because some of the charged fees were incurred

11

while researching damages never claimed in the complaint. My review also identified certain fees that appear twice in the itemized list. To the extent that the claimed fees fit into one of these categories, I find the fees to be unreasonable. Therefore, I respectfully recommend that plaintiffs be awarded fees against Defendant Torretta in the amount of $4,122.11.

*ii.    Costs*

ERISA allows for the recoupment of costs. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs have provided documentation that their costs total $556.31. (See Damages Aff., Ex. J.) The expenditures are for filing fees, service of process, and some postage and photocopying. I find the amount reasonable and respectfully recommend that plaintiffs be awarded costs against Defendant Torretta in the amount of $556.31.

**f.    Permanent Injunction**

In addition to monetary damages, plaintiffs also seek a permanent injunction to ensure that defendant complies with the MTA Agreement and the requirements of ERISA. (Compl. ¶ 27.) A permanent injunction can be an appropriate remedy under § 1132(g)(2)(E) of ERISA, which states that in a successful action to enforce the requirements of ERISA, an ERISA plan may recover "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E).

However, the Second Circuit has cautioned that "injunctive relief does not follow automatically upon a finding of statutory violations . . . ." King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *8 (E.D.N.Y. Oct. 3, 2006) (citing Town of Huntington v. Marsh,

859 F.2d 1134, 1143 (2d Cir. 1988)). "Plaintiffs must also show irreparable harm and the absence of an adequate remedy at law in order to obtain a permanent injunction." Id. (citing Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57 (1975); New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989)).

In the instant case, plaintiffs have not provided the Court with sufficient documentation to support their claim for injunctive relief. They have not have demonstrated that they will suffer irreparable harm should the injunction not be granted or that the remedy at law is inadequate. Accordingly, I respectfully recommend that plaintiffs' request for a permanent injunction be denied.

### III. CONCLUSION

For the above-mentioned reasons, I respectfully recommend that a judgment of $7,025.93 be entered against Defendant Torretta. This amount reflects $1,098.71 in unpaid contributions; $205.92 in interest; $367.88 in liquidated damages; $675.00 in administrative fees; $4,122.11 in attorneys' fees; and $556.31 in costs.

I respectfully recommend that a judgment of $1,876.66 be entered against Defendant Torretta. This amount reflects $1,098.71 in unpaid contributions; $102.95 in interest; and $675.00 in administrative fees.

I respectfully recommend that the Court deny plaintiffs' claims for damages stemming from June 2005 through February 2006, and from the audit covering July 2004 through August 2005. Furthermore, I respectfully recommend that the plaintiffs' request for a permanent injunction be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

SO ORDERED.

Dated: October 11, 2007
       Brooklyn, New York

                                              /s/
                                    JOAN M. AZRACK
                                    UNITED STATES MAGISTRATE JUDGE

Copy also sent to:

Torretta Trucking, Inc.
97 Osgood Avenue
Staten Island, New York 10304

Giuseppe Scalici
97 Osgood Avenue
Staten Island, New York 10304